## [No. 3631.]
## FREEMAN ET AL. v. BROCKWAY.

1. JUDGMENT LIEN—CONTRACT.

B., a judgment creditor, had on file in the county a transcript of judgment, and had attached certain real estate standing on the record in the name of a third party, and procured an injunction restraining the judgment debtors from transferring any property. N. also had a judgment against the same debtors, and solicited from B. information that would uncover some of the property of the debtors standing in the name of third parties. B. executed a written agreement that the debtors might transfer certain property to F. trustee for N., subject however to his attachment and judgment lien, and providing that all property so transferred should thereby be made subject to his judgment lien. Transfer of the property was made to F. stipulating that the transfer was made subject to B.'s judgment lien. *Held*, that although B.'s attachment was defective, and whether or not his judgment lien was valid, since by reason of B.'s consent N. was enabled to procure the transfer of the property, N. was bound by the provisions of the agreement with B. and accepted the transfers subject to B.'s prior lien.

2. CONTRACT—SIGNATURE.

Although N. did not sign the written agreement it accepted the same and took advantage of the information furnished by B. and is as much bound by the instrument as though it had been signed.

*Appeal from the District Court of Arapahoe County.*

Mr. W. S. DECKER, for appellants.

Mr. H. E. LUTHE and Mr. JOHN P. BROCKWAY, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

This is a contest over certain lands situate in Conejos county. It arises out of the following facts: In the year 1892, Theodore C. Henry and his wife Ellen C. Henry were indebted to appellee John P. Brockway in the sum of about $40,000. Brockway, having instituted suit for the recovery of this indebtedness, obtained an injunction restraining the

Henrys from transferring any of their property, real or personal. He also sued out a writ of attachment and instructed the sheriff of Conejos county to levy the same upon the lands in controversy then standing in the name of the Blanca Farm Company. Although the legal title to these lands was in the Blanca Farm Company, it is conceded that the equitable title was in the Henrys. The lands were in fact purchased with their money, the title having been taken in the name of the Blanca Farm Company for the purpose of preventing certain creditors of the Henrys and companies under their control, from subjecting these lands to the payment of certain indebtedness, and thereby avoid certain legal complications anticipated from such creditors. The Blanca Farm Company was at the time a corporation organized under the laws of the state of Colorado with a capital stock of 250 shares, of which Mrs. Henry was the owner of 247 shares, Mr. Henry, Mr. Fuldman and Mr. Coulson, each one share.

On the 29, day of December, 1892, Brockway obtained judgment in his action against the Henrys for the sum of $39,663.65, and on the next day obtained a transcript of said judgment, and caused the same to be duly filed and recorded in Conejos county.

At the time this judgment was obtained and for a long time prior thereto, Theodore C. Henry had been indebted to the City National Bank of Denver in a large sum of money. The bank being desirous of securing this indebtedness and Henry being unable to pay the same, Mr. Freeman, the then cashier of the bank, went to Mr. Brockway and solicited from him information that would enable the bank to uncover some of the property of the Henrys standing in the name of other parties. Brockway informed Mr. Freeman that he was willing to aid him in the matter, provided his (Brockway's) judgment should first be protected, and thereupon Brockway drafted and signed the following instrument in writing and gave the same to Mr. Freeman for the bank:

" At the request of the City National Bank of the City of

Denver, I hereby give my consent to allow Theodore C. Henry or Ellen C. Henry, or either or both of them, to transfer, convey or assign all or any of their property, upon which I have a lien by attachment, or by reason of my judgment against them heretofore obtained in the district court of Arapahoe County, Colorado, to B. N. Freeman, trustee for said bank, subject, however, to my attachment proceedings and my said judgment, and upon the conditions which shall be agreed to by all the parties to the assignment, that the assignment or conveyance is in no way to impair the lien of my attachment or my judgment, or my right to collect and enforce the same, *and that all of the property so assigned or conveyed shall be made thereby subject to the lien of my judgment.*

" Witness my hand and seal this 28th day of January, A. D. 1893.

"(Signed)    JOHN P. BROCKWAY    (Seal)."

It appears that no consideration was given for the above other than such as is expressed in the writing itself to the effect that all property assigned or conveyed to Freeman by virtue of this agreement should be subject to the lien of the Brockway judgment.

The necessity on the part of the bank for this agreement arose from the injunction against the Henrys restraining them from transferring, or in any manner incumbering, any of their property, real or personal. Under the consent secured from Brockway, the Henrys, for the protection of the bank, and for a new consideration paid to them, executed a writing to Freeman, as trustee for the bank, and afterwards executed conveyances for the lands in controversy in accordance with such writing, which writing reads as follows:

" DENVER, COLO., Jan. 28, 1893.

" For a good and valuable consideration to us in hand paid, we hereby sell, assign, transfer, set over and convey to B. N. Freeman, trustee, all our rights, title and interest in and to

all of the property attached by, and upon which J. P. Brockway has a lien, including real estate and stocks in different corporations, excepting therefrom all lands in Morgan County, Colorado, and we hereby agree to hereafter execute such deeds, conveyances, assignments and instruments as shall be necessary to convey to the said B. N. Freeman, trustee, all our interest in the foregoing property, which was attached in the suit of J. P. Brockway against us, or either of us, in a suit brought in the district court of Arapahoe County, State of Colorado, in the year eighteen hundred and ninety-two, *and upon which the said Brockway has a lien at the present time by virtue of a judgment rendered by said court against T. C. Henry and Ellen C. Henry. It is understood that the foregoing assignment and transfer shall be subject to the aforesaid lien of said J. P. Brockway.*

" (Signed)         T. C. Henry,

" Ellen C. Henry."

Appellant's claim that the attachment writ was not properly served and that for this reason it constituted no lien upon the lands in question, and that the record of the judgment was not a lien for the reason that the record title to the lands was in the Blanca Farm Company, the Henrys only having the equitable title thereto.

The contention of appellee is that under the statute of Colorado the record of the judgment in Conejos county created a lien upon all the real estate of the defendants, both legal and equitable; *second*, that in any event the plaintiff is estopped by the written agreement from denying the validity or priority of plaintiff's lien upon the lands in controversy.

A trial in the district court resulted in a decree in favor of appellee. It is declared in such decree that the lien of the Brockway judgment is a paramount lien upon the land in question. To reverse this decree the cause is brought here by appeal.

It is entirely unnecessary to determine whether under the laws of Colorado the transcript of the judgment filed in

Conejos county created a lien upon the lands in controversy, the record title to which lands was in the Blanca Farm Company, and the equitable title in the Henrys; for only by reason of the written consent secured at the instance and request of appellants were the Henrys enabled to make the conveyance under which appellants now claim. This consent provides in express terms that "all of the property so assigned or conveyed shall be made thereby subject to the lien of my judgment." Likewise by the terms of the contract executed by the Henrys to the bank, it is provided that all transfers and assignments made by them shall be subject to the lien of the Brockway judgment.

It must be borne in mind that of the parties to this action Brockway alone knew of the interests of the Henrys in the property in controversy; and that appellants were unable to collect their judgment without his assistance; and that only as a last resort did they appeal to him for information that would enable them to secure property equitably belonging to the Henrys, although standing upon the records in the name of a third party. The evidence expressly shows that while Brockway was willing to aid the plaintiffs in uncovering the Henrys' property, he was only willing to do so upon the express condition that all property assigned or conveyed to the bank, or for its use, should be subject to the lien of his judgment; and although the bank did not sign this writing, it accepted the same and took advantage of the information imparted by Brockway, and it is as much bound by the instrument as though it had duly executed it.

At the time Brockway permitted the transfer to be made by the Henrys, he had this identical property covered by his attachment, although such attachment was defective. He had also on file in the proper county a transcript of his judgment. Moreover, the Henrys were enjoined from making any transfer of their property, either real or personal.

In these circumstances we are clearly of the opinion that the concession secured by the bank from Brockway could not be used to defeat the collection of his claim. His right,

which theretofore depended upon the validity of his judgment lien, was broadened by contract so that, as between Brockway and the bank, the lien of the judgment was made absolute. This appears from all the circumstances surrounding the transaction as detailed by the witnesses upon the stand, as well as by the written instrument. The latter expressly provides that all transfers and assignments that shall be executed by the Henrys under the consent conferred "shall be made thereby subject to the lien of my judgment."

This is not only the plain meaning of the language employed, but it was evidently so intended by the parties. Brockway, a lawyer, certainly understood the full force and effect of the language used by him in the written instrument, and the same must also be said of the attorney representing the bank, who was present and advised his client with reference to the negotiations.

We think the judgment of the district court is correct and should be affirmed.

*Affirmed.*